IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RHONDIA MILLINGS, DAWN ADAMS and ARMANDO TREJO, for themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>TRANSDEV SERVICES, INC.,<br><br>       Defendant. | No. 20-CV-07711<br><br>Judge John J. Tharp, Jr. |

**MEMORANDUM OPINION AND ORDER**

Rhondia Millings, Dawn Adams, Armando Trejo,[1] and Candice Carbo (collectively, the plaintiffs), former employees of Transdev Services Incorporated, seek conditional certification of a collective of Transdev transportation operators pursuant to Section 216(b) of the Fair Labor Standards Act for alleged violations of the FLSA's overtime provisions. The plaintiffs claim that they were not properly compensated for overtime work performed (1) prior to the start of their scheduled shifts, (2) following their scheduled shifts, and (3) when they worked through unpaid meal breaks. Transdev opposes the motion on two grounds. First, Transdev argues that the plaintiffs have not made the requisite showing that there are other similarly situated employees to permit the dissemination of notice. Second, Transdev claims that the plaintiffs failed to produce

---

[1] There is a dispute between the parties as to Trejo's last date of employment with Transdev and whether the statute of limitations has expired on his claim. Def. Resp. 3, ECF No. 41. This is not an issue that the Court need address at this stage. Contrary to Transdev's assertions, the expiration of the statute of limitations does not preclude this Court from considering the evidence put forth by Trejo as a former Transdev employee in evaluating the motion for conditional certification. Def. Resp. 4, ECF No. 41; *See Russell v. Illinois Bell Tel. Co.*, 575 F. Supp. 2d 930, 934 (N.D. Ill. 2008) (granting conditional certification where the plaintiff submitted affidavits of other employees who were not parties to the pending action). The remaining three plaintiffs' claims have not expired.

evidence of an unlawful policy or practice that resulted in the FLSA violations they allege. For the reasons set forth below, the plaintiffs' motion for conditional certification is granted in part and denied in part.

## BACKGROUND

**I.      Collective FLSA Actions**

The FLSA requires an employer to pay a non-exempt employee an overtime rate equal to at least one and a half times the regular wage for work in excess of forty hours per week. 29 U.S.C.A. § 207(a)(1). Pursuant to the FLSA, "any one or more employees" may pursue an action alleging a violation of the FLSA on "behalf of himself or themselves or other employees similarly situated." 29 U.S.C.A. § 216(b). In contrast to a class action, governed by Federal Rule of Civil Procedure 23, the FLSA collective action uses an opt-in process where the plaintiff sends out notice to potential claimants who subsequently must opt-in to the litigation if they wish to participate. *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010) ("The principle [sic] difference is that plaintiffs who wish to be included in a collective action must affirmatively opt-in to the suit . . . while the typical class action includes all potential plaintiffs that meet the class definition and do not opt-out.").

District courts have "wide discretion to manage collective actions." *Id.* at 449; *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989) ("[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."). The Seventh Circuit has not definitively prescribed the procedure for determining whether a FLSA suit should proceed as a collective action, but courts generally follow a "widely approved" two-step process. *In re New Albertsons, Inc.*, No. 21-2577, 2021 WL 4028428 at *2 (7th Cir. Sept. 1, 2021). At the first step, the Court must determine "whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the

2

opportunity to opt in." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011). To succeed at this first step, a plaintiff must demonstrate that there are other "similarly situated" claimants by making "a modest factual showing" that other employees were subject to a "common policy or plan that violated the law." *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855 (N.D. Ill. 2013); *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003). If this standard is met, then notice is sent to potential collective members, opening the door for other employees to opt-in to the collective action.

At the "more stringent" second step, following the opt-in process and the completion of discovery, the Court reevaluates conditional certification to determine if the case should continue to proceed to trial on a collective basis. *Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 849 (N.D. Ill. 2017); *Grosscup v. KPW Mgmt., Inc.*, 261 F. Supp. 3d 867, 870 (N.D. Ill. 2017). If there is a lack of sufficient similarity among the plaintiffs, then the Court may decertify the collective and permit the plaintiffs to pursue their claims on an individual basis. *Alvarez*, 605 F.3d at 450.

As Transdev points out, the "modest" standard at the conditional certification stage may become more rigorous if the Court permits "extensive discovery" prior to deciding the motion for conditional certification. Def. Resp. 10-11, ECF No. 41; *Bergman*, 949 F. Supp. 2d at 856. The Court declines to adopt such a heightened standard of proof here. The parties, up to this point, have engaged in the first phase of a bifurcated discovery process which limited discovery to the issues related to conditional certification and consisted of declarations, interrogatories, and document requests. Joint Status Report 2, ECF No. 16; *DeMarco v. Nw. Mem'l Healthcare*, No. 10 C 397, 2011 WL 3510905 at *3 (N.D. Ill. Aug. 10, 2011) (finding that the more stringent standard should not apply where the Court limited discovery to the disclosure of relevant policies and employee declarations); *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 439 n.3 (S.D. Ind. 2012) (finding that

3

"substantial discovery" had taken place where the parties relied on ten depositions and 6,000 pages of documents at the conditional certification stage, justifying the application of an intermediate level of scrutiny). Instead, the plaintiffs are held to the standard ordinarily imposed at step one: a modest factual showing that there are other similarly situated employees. *Bergman*, 949 F. Supp. 2d at 855.

## II. The Plaintiffs' Allegations

Transdev is an Illinois corporation that provides transportation services for municipalities and businesses across the United States. Def. Answer 4, ECF No. 17. During the proposed collective period, Transdev operated in twenty-four states and ran seventy-three operating facilities. Def. Resp. 5, ECF No. 41. As a part of its operations, Transdev employs a variety of employees, including fixed-route bus drivers, who operate regularly scheduled routes for municipalities and businesses, and paratransit drivers who provide "on-demand transportation to the disabled community on an on-call basis." Def. Resp. 6, 17, ECF No. 41.

The plaintiffs are four former operators, employed at Transdev facilities in Woodland, California, New Orleans, Louisiana, and Baltimore, Maryland. Pls. Mot. for Conditional Certification 1, ECF No. 35. The plaintiffs claim that Transdev's timekeeping practices deprived them of overtime pay. Pls. Compl. 3-5, ECF No. 15. Specifically, the plaintiffs allege that Transdev violated the FLSA's overtime pay provisions with three consistent practices: (1) Transdev "assigns its drivers a fixed start-time each day," which is the time that a driver must start their route and does not account for the "at least 15-20 minutes" spent conducting pre-route work, including checking in at the dispatch office, completing a pre-trip inspection, and receiving a daily manifest (Pls. Compl. 3, ECF No. 15; Pls. Reply, Ex. 1 at 1, ECF No. 44-1); (2) Transdev drivers clock out "as soon as they return their vehicle to the depot at the end of their route," but subsequently conduct post-route work totaling "at least 25 minutes" each day, including re-fueling the vehicle, parking,

completing a post-trip inspection, and checking out at the dispatch office (Pls. Compl. 4, ECF No. 15; Pls. Reply Ex. 1, at 1, ECF No. 44-1); and (3) some Transdev facilities automatically deduct a thirty-minute unpaid meal break, but drivers work through the meal break "approximately one time per week" (Pls. Reply Ex. 1, at 1; ECF No. 44-1).

Based on these allegations, the plaintiffs seek to send out notice to two collectives: one for employees who worked in facilities with automatic meal break deductions and one for employees who did not. Pls. Reply 14, ECF No. 44. The collectives they propose would disseminate notice to, "all people who have worked as a non-exempt, hourly-paid Driver for Transdev Services, Inc." across all seventy-three facilities "in any week during the maximum FLSA limitations period." Pls. Reply 14, ECF No. 44; Pls. Mot. for Conditional Certification 1, ECF No. 34.

### III. Factual Basis of the Certification Request

To support its motion for conditional certification of a collective action under § 216(b), the plaintiffs rely on two primary forms of evidence to establish the existence of other similarly situated employees: declarations from the plaintiffs describing these practices at their respective facilities and official documentation of Transdev's policies and practices. The plaintiffs' declarations consistently allege that their supervisors were aware that they completed between fifty minutes to one hour of unpaid overtime work each day. Millings Decl. 2, ECF No. 35-13; Adams Decl. 2, ECF No. 35-14; Trejo Decl. 2, ECF No. 35-15; Carbo Decl. 2, ECF No. 35-16. For example, Millings attests that she arrived at the depot thirty minutes prior to her scheduled route to find her bus, conduct an inspection, and pick up her manifest but "there was no way…to record my pre-shift work and the dispatch office did not track this work." Millings Decl. 1, ECF No. 35-13. Each plaintiff attests that he or she had to perform additional tasks after returning a bus to the depot, including parking and "complet[ing] a post-trip inspection," but there was no way to record

these hours for overtime compensation. Millings Decl. 1-2, ECF No. 35-13; Adams Decl. 1-2, ECF No. 35-14; Trejo Decl. 2, ECF 35-15; Carbo Decl. 2, ECF No. 35-16.

Three of the four plaintiffs attest that Transdev automatically deducted a thirty-minute unpaid meal break, but supervisors told the plaintiffs that they "had to get . . . permission" to take a break. Millings Decl. 2, ECF No. 35-13; Adams Decl. 2, ECF No. 35-14; Trejo Decl. 2, ECF No. 35-15. Trejo states that these requests were "only approved . . . about half the time," resulting in the plaintiffs working through the unpaid break 3-4 days per week on average.[2] *Id.* Further, there was no way to record this work and "supervisors did not approve, track, or record" the work done over meal breaks, resulting in that time worked going unpaid. *Id.*

The plaintiffs also provide documentary evidence, including job postings, training materials, and pre-route inspection checklists. Plaintiffs state that these documents outline the "exhaustive array of common requirements, policies, and practices that apply equally to all Drivers regardless of where they work." Pls. Mot. for Conditional Certification 2, ECF No. 35. These materials outline the duties and responsibilities of drivers, including to conduct pre- and post-route inspections, but make no mention of the unlawful timekeeping practices that the plaintiffs allege in their declarations. Pls. Mot. for Conditional Certification, Ex. 1-12, ECF No. 35-1 to 35-12.

Transdev provides its own evidence to contest the plaintiffs' motion for conditional certification. At a broad level, Transdev points to its decentralized management structure. On

---

[2] Candice Carbo, who worked in Transdev's New Orleans facility, stated that she consistently worked through her shift without taking a break, but she was not sure if Transdev automatically deducted thirty minutes from her hours. Carbo Decl. 3, ECF No. 35-16. Transdev subsequently provided evidence that an automatic thirty-minute meal break is not a consistent practice across all Transdev facilities, including at the New Orleans facility, leading to the plaintiffs' request to send two separate notices (one for employees subject to automatic meal break deductions and one for those who are not). Def. Resp. 14-15, ECF No. 42; Pls. Reply 14, ECF No. 44.

account of the unique needs of each client base it serves, each Transdev facility has its own management team and practices, including policies for keeping time and providing meal breaks. Def. Resp. 5, ECF No. 41; Def. Resp. Ex. 7, at 3, ECF No. 41-7. Transdev argues that it is inappropriate to infer that the plaintiffs' personal experiences give rise to a "common policy or plan that violated the law" across all Transdev facilities in the absence of a formal nationwide policy. *Bergman*, 949 F. Supp. 2d at 855; Def. Resp. Ex. 7, at 3, ECF No. 41-7.

In direct rebuttal to the plaintiffs' declarations, Transdev submits its own declarations of current Transdev employees who dispute that the alleged policies existed at the facilities where the plaintiffs worked. According to the declarations provided by Transdev, fixed-route drivers are paid on an hourly basis in accordance with their scheduled route. If a driver works additional hours, they must inform the dispatch office to be paid for those hours. Def. Resp. Ex. 5, at 2-3, ECF No. 41-5. At the New Orleans facility, paratransit drivers receive guaranteed payment for forty hours per week in accordance with their collective bargaining agreement, even if they work less than forty hours. *Id.* at 3. If a paratransit driver works more than forty hours in a week, then they must inform the dispatch office to be paid overtime. *Id.* Transdev also submits its own documentation, including the paysheets of the plaintiffs in this case, to dispute the validity of the plaintiffs' claims. Def. Resp. Ex. 11, ECF No. 41-11.

## DISCUSSION

### I. Similarly Situated Plaintiffs

To cross the "low hurdle" at the first step and send notice to potential collective members, the plaintiffs must present evidence of "an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation." *Barrett v. NorthShore Univ. Healthsystem*, No. 1:17-CV-09088, 2019 WL 4412726 at *3 (N.D. Ill. Sept. 16, 2019); *Russell v. Illinois Bell Tel. Co.*, 721 F. Supp. 2d 804, 812 (N.D. Ill. 2010) (internal citation omitted). Whether there other similarly

situated employees, such that the case should proceed on a collective basis, depends on several factors including "(1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Mielke v. Laidlaw Transit, Inc.*, 312 F. Supp. 2d 759, 762 (N.D. Ill. 2004).

To determine whether the plaintiffs have met their burden, the Court evaluates evidence submitted by both parties, keeping in mind that "defendants still have greater access to evidence than plaintiffs and plaintiffs' modest showing need not be conclusive." *Bergman*, 949 F. Supp. 2d at 856. At this stage, the Court "does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant." *Grosscup*, 261 F. Supp. 3d at 876.

  A.  **Pre- and Post-Route Work**

With respect to the three facilities for which they have personal knowledge, the plaintiffs have made a modest factual showing that there are similarly situated employees. The plaintiffs' declarations, accompanied by Transdev training materials describing inspection requirements and timekeeping systems, demonstrate sufficient commonality to justify the dissemination of notice. Pls. Mot for Conditional Certification Ex. 2, ECF No. 35-2; Pls. Mot. Ex. 3, ECF No. 35-3; Pls. Mot. Ex. 4, ECF No. 35-4. There is insufficient evidence, however, to establish that employees at the other seventy Transdev facilities were subject to the same policies that the plaintiffs allege violated the FLSA.

First, the plaintiffs have demonstrated that there are other similarly situated employees at the Baltimore, New Orleans, and Woodland facilities. The plaintiffs' individual declarations all describe a common practice of clocking in and clocking out at the start or end of a scheduled shift, which fails to account for any pre- or post-shift work. Millings Decl. 1, ECF No. 35-13; Adams

8

Decl. 1, ECF No. 35-14; Trejo Decl. 1, ECF No. 35-15; Carbo Decl. 1, ECF No. 35-16. The plaintiffs also provide formal job descriptions published by Transdev, which describe the duties and responsibilities of Transdev drivers, including to "[i]nspect each vehicle before and after each trip . . . and complete all necessary forms and report." Pls. Mot. for Conditional Certification Ex. 1, at 2, ECF No. 35-1. The duties for Transdev drivers also list the requirements to "fuel vehicle in accordance with company standards," "follow[] the correct end-of-shift procedures," and "[c]ontrol . . . pre-trip and post-trip forms while in possession, and turn in to dispatch." *Id.* The job descriptions for Driver, Coach Operator, Operator, Bus Operator, School Bus Driver, and Paratransit Driver are seemingly identical and list these responsibilities and requirements. *Id.* As such, the plaintiffs have demonstrated that there are similarly situated employees at these facilities, tasked with the same duties and responsibilities, who may have been subject to the practices that they describe.

Transdev argues that prospective collective members from the Baltimore, New Orleans, and Woodland facilities are differently situated for two reasons: (1) some facilities have fixed-route drivers and paratransit drivers whose pay is calculated differently; and (2) each facility utilizes different timekeeping practices, none of which violate the FLSA, according to the declarations of Transdev employees. Def. Resp. to Pls. Mot. for Conditional Certification 10, ECF No. 41.

Transdev states that paratransit drivers are paid a flat rate of forty hours per week and fixed route drivers are paid on an hourly basis. Def. Resp. to Pls. Mot. for Conditional Certification 10, ECF No. 41. If a paratransit driver "worked less than forty (40) hours per week s/he was still paid for forty (40) hours." *Id.* This distinction between paratransit and fixed-route drivers does not defeat the plaintiffs' motion for conditional certification at the three facilities where they worked.

9

A paratransit driver and fixed-route driver are both similarly entitled to overtime pay for work in excess of forty hours per week. Carbo, a paratransit driver, attested that she does not believe she "was paid for all the hours I actually worked" and describes similar timekeeping practices as those alleged by the fixed-route driver plaintiffs. Pls. Decl., Ex. 16, at 2, ECF No. 35-16.

Transdev also claims that the three facilities where the plaintiffs worked used different procedures to properly track driver hours, submitting their own declarations from current employees from those facilities. The contradictory statements of current Transdev employees does not override the plaintiffs' evidence demonstrating that there are similarly situated employees at those facilities. *Soto v. Wings 'R US Romeoville, Inc.*, No. 15-CV-10127, 2016 WL 4701444 at *8 (N.D. Ill. Sept. 8, 2016) ("[A]lthough Defendants have presented a modest factual showing of their own attempting to establish that they did not violate the law, that is insufficient to displace the testimony of the six declarants who say otherwise."). We are not yet at the stage to consider the merits of the plaintiffs' claims.[3] *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1135 (N.D. Ill. 2017) ("A FLSA plaintiff need not prove her claim in order to satisfy the relatively low burden of identifying other 'similarly situated' persons to whom notice should be provided."). At the conditional certification stage, the Court must consider all evidence on the record but should ultimately refrain from resolving factual disputes or making credibility determinations. *Barrett v. NorthShore Univ. Healthsystem*, No. 1:17-CV-09088, 2019 WL 4412726 at *4 (N.D. Ill. Sept. 16, 2019) ("Although the Court must 'evaluate[ ] the record before it, including the defendant's oppositional affidavits,'…it is inappropriate to evaluate parties' credibility or resolve factual

---

[3] Transdev did provide evidence that the New Orleans CBA contained a provision listing "Report/Pre-Trip" as "Hours going to OT calculation" in the section governing the calculation of working hours. Def. Resp. to Pls. Mot. for Conditional Certification Ex. 5, at 22; ECF No. 41-5. This evidence may be a dark cloud on the plaintiffs' merits horizon, but it does not undermine the modest factual showing offered by the plaintiffs at the first step for conditional certification.

disputes at this early stage.") (internal citation omitted); *Piazza v. New Albertsons, LP*, No. 20-CV-03187, 2021 WL 365771 at *6 (N.D. Ill. Feb. 3, 2021) ("These are quintessential examples of 'happy camper' declarations, and the Court need not consider them at this stage in the litigation.").

Turning to the proposed collective members from the other facilities, the plaintiffs freely admit that they have no knowledge of the timekeeping practices utilized at other Transdev facilities. Pls. Mot. for Conditional Certification Ex. 16, ECF No. 35-16; Def. Resp. Ex. 6, at 2, 10, ECF No. 41-6; Def. Resp. Ex. 4, at 2, ECF No. 41-4. Transdev has provided its own evidence demonstrating that policies vary according to the management at different facilities. For example, Transdev explained, and the plaintiffs subsequently admitted, that the thirty-minute meal break deduction is not a company-wide policy, but something that varies facility to facility. Def. Resp. 8-9, ECF No. 42; Pls. Reply 14, ECF No. 44. The same may be true with respect to tracking time spent on pre- and post-route work. The plaintiffs have presented no evidence to the contrary.

The plaintiffs' lack of knowledge, combined with the absence of any identifiable policy effectively limiting overtime pay for pre- and post-route work across all Transdev facilities, persuades the Court to deny the plaintiffs' motion for conditional certification apart from those facilities where they worked. The plaintiffs have failed to make the "modest factual showing" that there are similarly situated employees at other facilities subject to the same policies that they describe in their complaint and declarations. *See Strait v. Belcan Eng'g Grp., Inc.*, 911 F. Supp. 2d 709, 724 (N.D. Ill. 2012) (refusing to certify a nationwide collective where defendants provided evidence that policies and practices varied because of an individualized management structure). The plaintiffs may distribute a notice for their pre- and post-shift work claims only to those non-exempt drivers who were employed at the Baltimore, New Orleans, and Woodland facilities during the relevant period.

### B. Meal Break Deductions

The plaintiffs also seek to certify a collective for Transdev employees who were subject to an automatic thirty-minute unpaid meal break. In support of their motion, the plaintiffs submit the timesheets of Rhondia Millings and the declarations of three plaintiffs, Dawn Adams, Rhondia Millings, and Armando Trejo, who worked at the Baltimore and Woodland facilities. Pls. Mot. for Conditional Certification Ex. 10, ECF No. 35-10; Millings Decl. Ex. 13, 35-13; Adams Decl. Ex. 14, 35-14; Trejo Decl. Ex. 15, 35-15. The only plaintiff not subject to this automatic deduction was Candice Carbo, who worked at the New Orleans facility.

The description of the meal break policy is nearly identical across the plaintiffs' declarations. To take a meal break, the plaintiffs attest they were required to seek their supervisors' permission. Millings Decl. Ex. 13, at 2, ECF No. 35-13; Adams Decl. Ex. 14, at 2, ECF No. 35-14; Trejo Decl. Ex. 15, at 2, ECF No. 35-15. The plaintiffs claim that supervisors denied these requests with some regularity, requiring the plaintiffs to work through the unpaid break "4-5 days each week," "4 days each week," and "about three days each week." *Id.* According to the plaintiffs, there were no channels to report this work or reverse the deduction. *Id.*

In opposition, Transdev cites to declarations from current employees, which describe the inconsistency of the meal break policy across Transdev facilities and dispute that there was no method for the plaintiffs to record lost meal breaks. Def. Resp. to Pls. Mot. Ex. 10, at 3, ECF No. 41-10 ("Drivers at the Baltimore Facility are required to self-report any missed meal breaks."). Transdev also provides the payroll sheets of the plaintiffs. Notably, Trejo's timesheet includes a notation stating, "If a meal period or rest break was not provided, give the time and date, and explain why it was not provided and who you notified at the time in order to rectify the situation." Def. Resp. to Pls. Mot. Ex. 11, at 4, ECF No. 41-11.

Like the pre- and post-shift work claims, the plaintiffs acknowledge that they lack personal knowledge about the practices implemented by Transdev at the facilities where they were not employed. Carbo Decl. 3, ECF No. 35-16; Def. Resp. Ex. 6, at 2, 10, ECF No. 41-6; Def. Resp. Ex. 4, at 2, ECF No. 41-4. Transdev has provided evidence that the meal break policy is not universally implemented across all Transdev facilities, which the plaintiffs acknowledge. Therefore, for the same reasons as those outlined for the pre- and post-route work claims, the plaintiffs cannot certify the meal break collective for the seventy Transdev facilities where they were not employed. The plaintiffs have failed to make a modest factual showing that the employees at those facilities were subject to an automatic unpaid meal break, and, if so, that those employees were not properly compensated with overtime pay.

With respect to the Woodland and Baltimore facilities, the plaintiffs have made the necessary showing that there are similarly situated employees. Transdev's evidence, consisting primarily of employee declarations that dispute the plaintiffs' accounts, delves into the merits of the plaintiffs' claims, which is not the predominant inquiry at this step. Even if the evidence provided by Transdev suggests that the plaintiffs might face an uphill battle on the merits, it does not diminish the plaintiffs' factual showing that other similarly situated employees exist who may have been subject to the unlawful policy that they allege in their declarations. *See Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 15-CV-10447, 2016 WL 1043429 at *5 (N.D. Ill. Mar. 16, 2016) ("[I]t is within the Court's wide discretion to determine whether Plaintiffs hurdle their minimal burden to show that the proposed plaintiffs are similarly situated without 'consider[ing] the merits of a plaintiff's claims[.]'" (*quoting Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 751 (N.D. Ill. 2011))). For the plaintiffs' claim based on the automatic deduction of a thirty-minute

13

meal break, notice may be sent to non-exempt drivers who worked at the Baltimore and Woodland facilities during the relevant period.

## II. Collective Bargaining Agreements and Arbitration

As a defense to conditional certification, Transdev argues that the majority of Transdev employees are bound by collective bargaining agreements (CBAs) that waive their right to pursue a FLSA action because the CBAs require employees to proceed through agreed-upon arbitration and grievance procedures. Def. Resp. 7, ECF No. 42. This includes the facilities where the plaintiffs worked. Def. Mem. 3, ECF No. 61. Following the initial briefing on the motion for conditional certification, the Court ordered supplemental briefing on this issue in light of the Seventh Circuit's opinion in *Bigger v. Facebook*. *Bigger* addressed the question of "whether a court may authorize notice to individuals who allegedly entered mutual arbitration agreements, waiving their right to join the action." 947 F.3d 1043, 1047 (7th Cir. 2020). The Seventh Circuit ultimately held that a defendant has the opportunity to make a showing, by a preponderance of the evidence, that employees in the proposed collective are bound by arbitration agreements, in which case "a court may not authorize notice" to those individuals who waived "their right to join the action." *Id.* at 1050.

*Bigger* concerned the effect of individual mutual arbitration agreements signed by the plaintiff-employee and defendant-employer. *Id.* at 1048. Transdev does not point to individual arbitration agreements which expressly waive an employee's right to pursue a claim under the FLSA, but to CBAs entered into by unions on behalf of the employees. The Supreme Court has held that a CBA can waive an employee's right to pursue judicial relief for a statutory claim if it does so "explicitly." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258 (2009). Statutory rights, however, are distinct from the contractual rights guaranteed by a CBA and require an independent waiver analysis. *Vega v. New Forest Home Cemetery*, LLC, 856 F.3d 1130, 1133 (7th Cir. 2017)

14

(acknowledging that employees have distinct statutory and contractual rights); *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 79-80 (1988). Acknowledging this distinction, a CBA waives an individual employee's right to pursue a statutory cause of action in a judicial forum if it "clearly and unmistakably" requires the employee to utilize the CBA's grievance procedure for federal statutory claims. *Vega*, 856 F.3d at 1134.

Both the Baltimore and Woodland CBAs require that union members arbitrate all claims arising "under the terms of this Agreement." Def. Mem. Ex. D, at 22, ECF No. 62; Def. Resp. Ex. 9, at 61, 552, ECF No. 41-9. The New Orleans CBA similarly states that union members must use the grievance and arbitration procedures to resolve "any dispute arising from the interpretation or application of this Agreement." Def. Resp. Ex. 5, at 35, ECF No. 41-5. Transdev argues that these provisions, and similar language contained in the CBAs from other facilities, prevent this Court from issuing notice to the proposed recipients under *Bigger*. Def. Mem. 6, ECF No. 61.

Transdev's position disregards the requirement to find that employees have waived judicial remedies for violations of statutory rights. As the Seventh Circuit made clear in *Vega*, the language of the CBA must "clearly and unmistakably" require union members to arbitrate their statutory claims. *Vega*, 856 F.3d at 1131, 1135 (holding that the CBA did not clearly and unmistakably require the employee to use the CBA's grievance procedures for FLSA claims because the language of the arbitration clause "could be thought to mean a claim over the requirements of the contract itself rather than one about what the FLSA requires."); *see also Cloutier v. GoJet Airlines, LLC*, 996 F.3d 426, 436-37 (7th Cir. 2021) (holding that a CBA requiring arbitration for disputes "arising under the terms of the Agreement" did not "clearly and unmistakably" require an employee to arbitrate his FMLA claim). As there is no language in the Baltimore, New Orleans, or Woodland CBAs "clearly and unmistakably" requiring an employee to utilize the CBA's

15

grievance procedures to resolve an FLSA claim, or a claim arising under federal statutory law more generally, notice may be sent to non-exempt employees from those facilities. The Court does not need to consider the impact of the CBAs from other facilities that Transdev cites to because the plaintiffs failed to present evidence that there are similarly situated to employees at those facilities.

### III.     Form of Notice

The plaintiffs' proposed form of notice, ECF No. 44-1, states that the Plaintiffs claim that Transdev violated the FLSA by:

> (1) Allowing Drivers to perform approximately 15-20 minutes of work-related activities at the start of each shift before being put "on-the-clock" for payroll purposes; (2) Allowing Drivers to perform at least 25 minutes of work-related activities at the end of each shift after being taken "off-the-clock" for payroll purposes; and (3) Allowing Drivers to perform work-related activities during their unpaid meal break approximately one time per week without tracking this work or paying any wages for it.

In its response opposing conditional certification, Transdev objects to the plaintiffs' proposed form of notice, but fails to specify or explain its objections, requesting instead that additional time be provided to confer and reach a resolution between the parties. Def. Resp. 20, ECF No. 41. The plaintiffs oppose this request, noting that further delays to the opt-in process could extinguish viable claims. Pls. Reply 15, ECF No. 44. Instead, the plaintiffs offer an amended form of proposed notice addressing two substantive issues raised by Transdev in its briefing. Pls. Reply 13-14, ECF No. 44; Pls. Reply Ex. 1, ECF No. 44-1.

First, Transdev argues that the plaintiffs' original opt-in class included individuals who are exempt from the FLSA's overtime pay requirements because some managers also work as drivers, meaning that they operate in a "bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1); Def. Resp. 18, ECF No. 41. In response, the plaintiffs amend their proposed collective to include only "non-exempt, hourly-paid Driver[s]." Pls. Reply 14, ECF No. 44.

16

Transdev argues that determining which employees qualify as non-exempt will require the Court to conduct an individualized fact-intensive inquiry. Def. Resp. 19, ECF No. 41. This is an issue that is more appropriate to raise at step two, when the Court reevaluates the collective, not at step one. *See Boltinghouse v. Abbott Lab'ys, Inc.*, 196 F. Supp. 3d 838, 843 (N.D. Ill. 2016) ("[I]n this district, courts agree that '"concerns regarding a lack of common facts among potential class members and the need for individualized inquiries" should be raised at step two,' not step one." (*quoting Lukas v. Advoc. Health Care Network & Subsidiaries*, No. 14-2740, 2014 WL 4783028 at *3 (N.D. Ill. Sept. 24, 2014))). Even if this issue presented a hurdle to conditional certification, Transdev's Employee Handbook outlines a simple distinction between exempt and non-exempt employees, explaining that "[n]on-exempt employees are typically paid by the hour," and include operators (drivers), while "[e]xempt employees are typically paid a salary." Pls. Mot. for Conditional Certification Ex. 5, at 30, ECF No. 35-5. By applying Transdev's policy and limiting notice only to those drivers who qualify as non-exempt under the FLSA and are paid by the hour, the Court can avoid conducting a significant individualized inquiry to identify which drivers also work in a managerial capacity.

Second, as noted above, not all Transdev facilities deduct a thirty-minute unpaid meal break for fixed-route drivers. The plaintiffs acknowledge this and in response request that notice go out to two separate groups of employees: those who worked at Transdev facilities without the automatic thirty-minute unpaid deduction and those who worked at Transdev facilities with the automatic thirty-minute unpaid deduction. The Court resolves this issue by permitting the plaintiffs to disseminate notice for the meal break claim to the two facilities that implemented the automatic meal break deduction where three of the plaintiffs worked.

Although these issues are resolved, the Court rejects the plaintiffs' argument that Transdev's failure to lodge a specific list of objections in their response constitutes a waiver to the plaintiffs' proposed form of notice. Pls. Reply 15, ECF No. 44. The parties will have a short period of time to attempt to come to an agreement. To avoid further delays while the parties reach a resolution regarding the form of notice, Transdev is directed to produce the full name, last-known mailing address, and last-known email address of all individuals meeting the two collective definitions who worked for Transdev during the relevant period. *See Dennis v. Greatland Home Health Servs., Inc.*, 438 F. Supp. 3d 898, 902 (N.D. Ill. 2020) ("Such disclosures and transmission methods are now commonplace for issuing notice of FLSA collective actions.").

\* \* \*

For the reasons set forth above, the plaintiffs' motion for conditional certification and step-one notice is granted with respect to the pre- and post-shift work claims for the three facilities where the plaintiffs worked (Baltimore, New Orleans, Woodland) and for the two facilities with an automatic time deduction policy (Baltimore, Woodland) for the meal break claim. Conditional certification for the remaining facilities is denied. The parties are directed to confer and file an agreed upon notice and consent or file their competing versions by October 20, 2023.[4]

Date: October 6, 2023

John J. Tharp, Jr.
United States District Judge

---

[4] The participation of the parties in this process will not be construed as acquiescence to the Court's ruling granting the motion for conditional certification in part.

18